**William PERCIVAL, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Nos. 87–20, 87–21.**

Supreme Court of Wyoming.

Nov. 19, 1987.

Gerald M. Gallivan, Director, Paul T. Glause, Student Intern, and Josephine Fagan McClain, Student Intern, Laramie, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Asst. Atty. Gen., Cheyenne, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

This appeal is taken from the judgment and sentence rendered in a guilty plea hearing. After negotiating a plea agreement with the state, appellant William Percival was sentenced to a term in the state penitentiary. At the sentencing hearing, the court accepted appellant's plea of guilty, along with the plea agreement that the sentences run concurrently, but rejected the recommendation that appellant be given credit for time already spent in the county jail. Appellant's only contention on appeal is stated as:

> "Whether the court must advise the appellant he has no right to withdraw his plea if the court does not accept a plea bargain recommendation."

We will affirm.

In October of 1985, appellant, while intoxicated, beat and robbed an elderly gentleman. While awaiting trial on a charge of aggravated robbery, appellant escaped from the Park County jail. He stole food, clothes, and a horse during his two-and-one-half days at large, after which he was apprehended without incident. The aggravated robbery and escape charges were consolidated for subsequent proceedings and for the purposes of this appeal. Appellant originally pled not guilty by reason of mental deficiency to the charge of aggravated robbery, and not guilty to the escape charge. He later changed the aggravated robbery plea to nolo contendere, the record not being entirely clear as to whether it was part of the plea bargain. Pursuant to a plea agreement with the state, he changed his plea on the escape charge to guilty. The state in turn agreed that the sentences

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, Julie D. Naylor, Appellate Counsel, Cheyenne, Wyoming Defender Aid Program:

would run concurrently, that no additional charges arising from the escape would be brought and that the state would recommend appellant be given credit for thirteen months in the Park County jail. Appellant was told that the bargain was not binding upon the court, but if the court did not accept any part of the agreement, appellant would be given the opportunity to withdraw his plea. After the court received the presentence investigation report, including evidence of prior convictions, appellant was sentenced to a term of not less than ten nor more than fifteen years for the aggravated robbery charge and not less than two nor more than three years for the escape charge, said sentences to run concurrently. The court did not give appellant credit for the thirteen months spent in the Park County jail as recommended by counsel.

Rule 15(e)(1), Wyoming Rules of Criminal Procedure, provides that the attorney for the state and the attorney for the defendant may reach an agreement that, upon the entry of a plea of guilty or nolo contendere, the attorney for the state may do any of the following:

"(i) Move for dismissal of other charges; or

"(ii) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

"(iii) Agree that a specific sentence is the appropriate disposition of this case."

Rule 11, Federal Rules of Criminal Procedure, designates these same three provisions as A, B and C, which classifications will be used for the purposes of this opinion. The plea bargain entered into in the present case is a combination of all three provisions. The state's agreement not to bring additional charges against appellant appears to be a type (A) bargain. Although appellant was never actually charged with the crimes he committed while at large, the state could just as well have brought the charges and then agreed to dismiss them in exchange for the guilty plea rather than agreeing not to bring the charges in the first place. The concurrent sentencing bargain is a type (C) agreement, a specific type of sentence agreed by both parties to be appropriate for disposition of the case.

In the third agreement the state recommended appellant be given credit for jail time. This is a type (B) recommendation of a particular sentence. It can only be a type (B) and not a type (C) since it was a *recommendation* rather than an *agreement*. A type (B) agreement is somewhat confusing for it states that "such recommendation or request shall not be binding upon the court." This language in (B) infers that (A) and (C) are binding upon the court. The confusion stems from other subsections, along with the common understanding that *no* part of the plea bargain is binding upon the court until it is accepted. See *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); and *United States v. McGovern*, 822 F.2d 739, 743 (8th Cir.1987), cert. denied — U.S. ——, 108 S.Ct. 352, 97 L.Ed.2d —— (1987). The only interpretation which therefore gives meaning to all parts of the rule without contradiction, is that the court is not bound by any part of the plea bargain until such time as it accepts the bargain, thereby agreeing to be bound by it. If the court does not accept the plea agreement, the defendant must be given an opportunity to change his plea to not guilty. If the court accepts the plea bargain, it is bound by (A) and (C). A type (B) recommendation, however, is not binding upon the court even after acceptance of the plea, since it is only a recommendation of a particular sentence or a commitment not to oppose defendant's request.

"A (B) type of plea agreement is clearly of a different order than the other two, for an agreement to recommend or not to oppose is discharged when the prosecutor performs as he agreed to do. By comparison, critical to a type (A) or (C) agreement is that the defendant receive the contemplated charge dismissal or agreed-to sentence. * * * " Rule 11, F.R.Cr.P. (notes of Advisory Committee on Rules–1979 amendment).

As noted by the Advisory Committee, the federal rule had been the cause of some confusion leading to inconsistent results. The federal rule was amended in 1979 to make it clear that a type (B) plea bargain is a recommendation only, and is not binding upon the court even after acceptance of the plea. Further, should the court reject the recommendation, defendant nevertheless has no right to withdraw his plea. Before the federal rule was amended, it simply stated that "the court may accept or reject the agreement." The amended rule speaks in more specific terms of each provision of the bargain. It states that the court may accept or reject a type (A) or type (C) agreement. Regarding a type (B) agreement the rule states in relevant part:

" * * * If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea." Rule 11(e)(2), F.R.Cr.P.

Rule 15, W.R.Cr.P. has not been amended to include this provision. Appellant argues nevertheless, that the intent of this court is to follow the federal rules as amended, and he therefore had a right to be advised that he could not withdraw his guilty plea if the court did not follow the recommendation. Appellant argues that in *Keller v. State*, Wyo., 723 P.2d 1244 (1986), this court followed Rule 11, F.R.Cr.P. as amended, even though corresponding Rule 15, W.R.Cr.P. had not been amended. A casual reading of *Keller v. State*, supra, however, does not support such a conclusion. Rule 11, F.R.Cr.P. is not so much as mentioned in the entire text of Keller, nor is any other federal rule mentioned. The only reference to Rule 11, F.R.Cr.P. is found in a footnote which advises the reader that Rule 11, F.R.Cr.P., has been amended to require that certain advice be given the defendant. The Keller court did not rely upon the amended federal rule to reach its decision but upon the plain and ordinary meaning of the Wyoming rule. Even had the court adopted the amended federal rule in Keller, a one-time situation is no indication that the court will do likewise in another. We are not persuaded we should follow Rule 11, F.R.Cr.P., as amended. We adhere to the plain language of Rule 15, W.R.Cr.P.

Appellant also contends that he was misled by the court when he was told that if the court did not accept the plea bargain after receiving the presentence investigation report, he would be given the opportunity to withdraw his plea and enter a plea of not guilty and proceed to trial. Appellant maintains that he was never expressly given such opportunity. He may be correct since the court accepted the plea bargain and therefore was not required to permit a change of plea. See Rule 15(e)(3), W.R.Cr.P. The rule only requires that the defendant be given an opportunity to change his plea *if* the court does not accept the plea bargain. In the present case, the court went beyond its duty by informing appellant that *if* the court did not accept *any* part of the plea bargain, appellant would be given an opportunity to change his plea.

The purpose of Rule 15, W.R.Cr.P., is to allow the judge to determine whether the defendant entered a voluntary plea with a full understanding of the consequences. *Keller v. State*, supra. In this case, the court complied with all provisions of Rule 15, W.R.Cr.P., and appellant was afforded the terms of his plea agreement. The court's rejection of the recommendation was within the discretion of the judge. Appellant fully understood that the maximum possible penalty for aggravated robbery is twenty-five years, and he received a maximum of fifteen years. Appellant was not misled or tricked in any manner.

Affirmed.

URBIGKIT, J., filed a dissenting opinion.

URBIGKIT, Justice, dissenting.

I respectfully dissent.

In the hearing held on September 30, 1986, after the plea bargain had been dis-

cussed in detail which involved credit for presentence jail time of the 13 months,[1] and after the judge had advised that he would not be controlled by any plea bargain, the following was said:

"Now, Mr. Percival after I received the presentence investigation report if I don't want to accept any parts of the plea bargaining, I will give you the opportunity to withdraw the pleas you have made and give you the opportunity to enter a plea of not guilty and go to trial.

"Do you understand that?

"MR. PERCIVAL: Yes."

At the sentencing hearing November 25, 1986, after extensive review of the facts and the event involved, the court said:

"The Court is not going to give jail time based on the escape from the Park County Jail. If you had not escaped from the Park County Jail, the Court would have certainly considered giving you jail time, probably in light of my past sentencing.

1. Since the issue stated by this court is that the trial court did not give appellant credit for the 13 months spent in the Park County jail awaiting trial, one would ask how this could be since by Rule 204, Uniform Rules for the District Courts of the State of Wyoming, Wyoming has a 120–day speedy-trial provision.

That rule provides:

"(a) It is the responsibility of court and counsel to insure to each person charged with crime a speedy trial.

"(b) A criminal charge shall be brought to trial within 120 days following the filing of information or indictment.

"(c) The following periods shall be excluded in computing the time for trial:

"(1) All proceedings related to the mental illness or deficiency of the defendant.

"(2) Proceedings on another charge.

"(3) Delay granted by the court pursuant to Section (d).

"(4) The time between the dismissal and the refiling of the same charge.

"(5) Delay occasioned by defendant's change of counsel or application therefor.

"(d) Continuances may be granted as follows:

"(1) On motion of defendant supported by affidavit of defendant and defendant's counsel.

"(2) On motion of the prosecuting attorney or the court if:

"(i) The defendant expressly consents; or

"(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or

"(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced.

"(e) Upon receiving notice of possible delay the defendant shall show in writing how the delay may prejudice his defense.

"(f) If the defendant is unavailable for any proceeding at which his presence is required, the time period shall begin anew upon defendant's being available."

Sequentially, the record shows that on October 9, 1985, defendant was arrested and initially appeared in justice of the peace court for arraignment on a charge of attempted murder. Bond was set at $25,000, and a preliminary hearing scheduled for October 18. On that day, a motion by defendant to suspend proceedings was made for transfer of the case to the district court in order that a mental illness or deficiency evaluation could be made. An order appointing a designated examiner was signed by the district court on October 23, providing for transfer to the Wyoming State Hospital at Evanston. After examination, the case was remanded to the justice of the peace court on November 26 for a preliminary hearing. Following a motion for a change of judge, the preliminary hearing was apparently held on January 21, 1986, with the information then filed in the district court on January 31, 1986, which would have commenced the 120–day speedy-trial time. Although an order was entered on February 5 for the arraignment on March 25, Percival was arraigned by a different judge on March 5, at which time pleas of not guilty and not triable by reason of present insanity were entered. An order for examination was then entered on March 14 for a further medical evaluation by Dr. Brian Miracle in Lander. The comprehensive evaluation report, dated May 23, 1986, was filed in the district court May 30. During this period of time, having been returned from Lander, the defendant remained in the county jail. On July 15, 1986, an order was entered setting the case for trial on September 30. Unfortunately, on August 14, Percival, without right, leave or privilege, departed the jail, having then been incarcerated for nine and one-third months except while in Lander and Evanston for mental evaluation. On September 30, 1986, he reappeared in district court and entered pleas of guilty to unlawfully escaping from official detention, and nolo contendere to aggravated robbery. The escape episode apparently lasted two and one-half days before he was rearrested.

This is how a speedy-trial provision of 120 days became 13 months in confinement time. It is strongly indicated in the record that the escape effort was the result of the delayed trial. Obviously, that did not afford either legal or moral justification, but it does demonstrate the emotional nature of the claim that credit for the 13 months should have been given on the sentence.

**562**

"You took it upon yourself to escape, and I haven't remarked about the two crimes you committed while out."

The record clearly defines the original plea-bargain discussion to be that with the pleas of guilty to escape, and nolo contendere to aggravated robbery, other charges would be dismissed, sentences would be concurrent, and credit for jail time would be recommended. No maximums or minimums were stated. Under these circumstances, it is hard to understand why the trial court, if it felt that additional punishment should be assessed for the escape in contravention of the concurrent sentences, did not simply raise the minimum sentence on the aggravated robbery to 11 years and one month or give the defendant a right to replead.

I dissent in this case simply because the judge did advise the defendant on initial discussion that, if the trial court rejected the plea bargain, the defendant would be given an opportunity to change his plea. This was not done. Little benefit is afforded by a comprehensive review of the provisions of the federal rule, Rule 11(e), F.R. Cr.P.[2] and the present state rule on plea bargains, Rule 15(e), W.R.Cr.P.[3] Hence,

the issue with which I am concerned is simply that what was said on initial plea did not occur when sentencing was entered. Certainly the actual sentence was reasonable, and the attitude of the court fair and realistic.

Although the result in this case does not disturb my sensibilities, concern is raised for a rule apparently created. The court seems to say that even if the pleading defendant is led to believe he will have an opportunity to change his plea before sentence when the plea bargain is rejected, the opportunity to replead is even so not provided. I do not find the issue as actually presented to be whether the Wyoming rule in its unmodernized form accommodates in some fashion the specific requirement of the federal rule of advice to the defendant that if the recommendation aspect of the plea bargain is not accepted, the defendant will have no automatic right to withdraw his plea. Rule 11(e)(2), F.R.Cr.P. The trial court here did not state any restriction on the defendant's right to withdraw the plea if the court elected to reject the recommended arrangement derived by the parties as a plea bargain. See the converse result,

2. "(e) Plea Agreement Procedure.
  * * * * *
  "(2) Notice of Such Agreement. If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea.
  * * * * *
  "(4) Rejection of a Plea Agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the

disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement." Rule 11(e), F.R.Cr.P.

3. "(e) *Plea agreement procedure.*
  * * * * *
  "(2) Notice of Such Agreement.—If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, *in camera,* at the time the plea is offered. Thereupon the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.
  * * * * *
  "(4) Rejection of a Plea Agreement.—If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, *in camera,* that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement." Rule 15(e), W.R.Cr.P.

where the state seeks to enforce the bargain, including a sentence recommendation, *Commonwealth v. Coles*, Pa.Super., 530 A.2d 453 (1987).

It is to be said that if the judge advises the defendant that he will have a right to change his plea upon plea-bargain rejection, all aspects of the bargain are included in the proviso unless restriction is made or terms excluded. What we should seek is that each party knows what the rules of the game will be and can make a decision intentionally and with knowledge.

Although I am not convinced that it would necessarily do any favor to the defendant, since to remand for sentencing could accommodate the identical result of the present sentence, a more severe sentence, or even a new trial which is implausible under the circumstances, I would reverse and remand since the defendant was not afforded an opportunity which had been previously stated to be available to him at the time of original entry of his plea.