Timothy Jay **MEHRING**, Appellant (Defendant),

v.

The **STATE of Wyoming**, Appellee (Plaintiff).

No. 92–114.

Supreme Court of Wyoming.

Sept. 27, 1993.

Leonard D. Munker, State Public Defender, Cheyenne, and Lee E. Christian, Fort Collins, CO, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., and Barbara L. Boyer, Sr. Asst. Atty. Gen., Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

TAYLOR, Justice.

Appellant, Timothy Jay Mehring (Mehring), pled guilty to two counts of sexual assault in the second degree. He brings this appeal to challenge the sufficiency of the procedure used by the trial court in determining his understanding of the charges. In addition, Mehring maintains his guilty pleas were not voluntary, in part, because one of the three public defenders who represented him performed in such a deficient manner as to constitute ineffective assistance of counsel. Finally, Mehring asserts the contents of a presentence investigative report violated substantive and procedural requirements.

We affirm. However, because of a procedural error in sentencing, we order a limited remand to complete the record.

## I. ISSUES

Mehring identifies four issues for this court's consideration:

I. Does the court's failure to advise appellant of the nature of the charge as required by Wyoming Rule of Criminal Procedure 15 require automatic reversal?

II. Was appellant's guilty plea knowing, intelligent and voluntary?

III. Was appellant prejudiced by ineffective assistance of counsel at several critical stages of the proceedings?

IV. Did the presentence investigation report violate W.R.Crim.P. 32 and due process?

## II. FACTS

In December of 1990, Mehring moved into a Jackson, Wyoming townhouse. An eleven-year-old child (victim) and the child's father also lived in the townhouse. Shortly after moving in, Mehring committed an act involving sexual contact with the victim. In a series of incidents between December of 1990 and May of 1991, the sexual contact escalated to sexual intrusion.

Jackson police interviewed the victim and the victim's father while investigating another reported occurrence of sexual contact with a minor allegedly involving Mehring. Further investigation resulted in the filing of an Information on July 23, 1991, charging Mehring with eight counts of sexual assault in the second degree, Wyo.Stat. § 6–2–303(a)(v) (1988), and two counts of sexual assault in the third degree, Wyo. Stat. § 6–2–304(a)(ii) (1988). All the charges stemmed from incidents involving the victim living in the townhouse.

Mehring appeared at a change of plea hearing on February 3, 1992. The State disclosed that as part of a plea bargain, Mehring had agreed to plead guilty to two counts of sexual assault in the second degree and the State had agreed to dismiss the first eight counts of the Information.

Additionally, the State had agreed not to bring charges for the alleged sexual assaults of other victims. Mehring established a factual basis for the pleas at the hearing.

Following a presentence investigation, the trial court sentenced Mehring to serve terms of not less than eighteen years nor more than forty years at the Wyoming State Penitentiary for each count of sexual assault in the second degree. The sentences are to be served concurrently. The sentences given by the trial court exceeded the State's recommendation of ten to twenty-five year terms contained in the plea bargain. Following the filing of a timely appeal, this court ordered a limited remand for an evidentiary hearing to consider issues related to the claim of ineffectiveness of counsel.

### III. DISCUSSION

 This court reviews the conduct of a hearing in which a guilty plea is entered as a whole. *Stice v. State*, 799 P.2d 1204, 1209 (Wyo.1990). Our inquiry determines if the district court sufficiently described the nature of the charges, including the possible penalties; informed the defendant of the right to representation; informed the defendant of the rights waived by a guilty plea; and obtained a factual basis for the plea. *Osborn v. State*, 806 P.2d 259, 271 (Wyo.1991); *Stice*, 799 P.2d at 1209; W.R.Cr.P. 11(b). The intent of the procedural requirements is to prevent the individual charged with a crime from being misled into a waiver of substantial rights. *Peper v. State*, 768 P.2d 26, 29 (Wyo.1989).

Mehring maintains reversible error occurred when the trial court failed to advise him of the nature of the charges before accepting his guilty plea. Mehring considers the failure of the trial court to either explain the elements of the charges or obtain a representation by counsel that the nature of the charges had been explained violated the rule of strict compliance announced in *Crawford v. State*, 701 P.2d 1150, 1153 (Wyo.1985). *See also Smallwood v. State*, 748 P.2d 1141, 1143 (Wyo.1988).

At the outset of the change of plea hearing, the trial court informed Mehring that before accepting his plea, the trial court would be talking to him to "make sure that you understand exactly what you're doing." After confirming that Mehring did not desire to proceed with his scheduled jury trial, the trial court inquired:

THE COURT: Do you understand, Mr. Mehring, that if you plead guilty to one or more of these counts, that you are admitting all of the essential elements contained in those counts, that there won't be a further trial of any kind?

THE DEFENDANT: Yes, Your Honor.

 \* \* \* \* \* \*

THE COURT: Mr. Mehring, it is my understanding that you are choosing to plead guilty to two counts of second degree sexual assault; is that correct?

THE DEFENDANT: Yes \* \* \*.

The trial court then informed Mehring of the possible minimum and maximum sentences he faced if he pled guilty. This colloquy followed:

THE COURT: Do you have any questions about these charges or any of the possible consequences?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you recall—[the judge who] arraigned you on this case. Do you recall him talking with you about the elements of the crime?

THE DEFENDANT: Yes \* \* \* I do.

THE COURT: You understand the State has to prove each element contained in each count by proof beyond a reasonable doubt before you can be convicted of these crimes?

THE DEFENDANT: Yes.

Prior to accepting the guilty pleas, the trial court questioned whether Mehring had discussed his change of pleas with his counsel. Mehring replied that he had.

When the change of plea proceeding occurred, the applicable rule of criminal procedure provided, in part:

Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

> (1) The nature of the charge to which the plea is offered * * *[.]

W.R.Cr.P. 15(c)(1), Wyo.Rep. 578–584 P.2d XIX (1978) (hereinafter Former Rule 15). *See* W.R.Cr.P. 11(b).

■ Analysis of a trial court's compliance with the requirements of Former Rule 15 may be divided into two components, one mandatory and one discretionary. The mandatory component is stated in the plain language of the rule. The trial court accepting the plea must *inform* the accused of the nature of the charge and *determine* that the charge is understood *before* accepting the plea. The failure to satisfy this component will result in reversal as a violation of due process. *Crawford,* 701 P.2d at 1153.

■ The discretionary component is the trial court's ability to select the means utilized to comply with the requirements of Former Rule 15. "We have no hard and fast rule regarding how much information is necessary to explain the nature of a charge to a defendant." *Stice,* 799 P.2d at 1209. We have noted that one method would be for the trial court to read the indictment or information and permit the defendant to ask questions. *Peper,* 768 P.2d at 29. Another method may be to explain the elements of the charged crime and define complex legal terms. *Id.* at 30. "The actions required of the district court in any particular case depend largely on whether the elements of the offense are difficult to understand, considering both their complexity to the average person with no legal training and the sophistication of the individual defendant." *Id.* The relevant question on appeal becomes whether the means selected by the trial court complied with constitutional requirements of due process and the intent of Former Rule 15.

The pertinent language of Former Rule 15 was identical to the pre–1983 version of Rule 11 of the Federal Rules of Criminal Procedure. 1 Charles Alan Wright, *Federal Practice and Procedure: Criminal 2d,* § 171 (1982 & Supp.1993). *See Britain v. State,* 497 P.2d 543, 545 (Wyo.1972). The present F.R.Cr.P. 11, as amended in 1983, is substantially similar to revised W.R.Cr.P. 11 which became effective March 24, 1992. In adopting rules which are substantially similar to the Federal Rules of Criminal Procedure, this court has traditionally given great weight to relevant precedent from federal courts, particularly the Supreme Court of the United States. *See, e.g., Farbotnik v. State,* 850 P.2d 594, 603–04 (Wyo.1993) and *Dobbins v. State,* 483 P.2d 255, 258 (Wyo.1971).

In the leading case on determining the understanding of the charge, *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the Supreme Court of the United States offered guidance on the sufficiency of the notice required before a guilty plea may be accepted in a plea bargain. Morgan was charged with first-degree murder; but in a plea bargain, he agreed to plead guilty to second-degree murder. *Id.* at 638, 96 S.Ct. at 2254. The United States Supreme Court held Morgan's plea was involuntary because he did not receive adequate notice that intent to kill was an element of second-degree murder. *Id.* at 647, 96 S.Ct. at 2258.

Two critical points converged to result in the decision. First, Morgan never received the constitutionally required notice of the charge he faced. *Id.* at 645, 96 S.Ct. at 2257. The original indictment did not include a charge for the lesser included offense of second-degree murder. *Id.* at 642, 96 S.Ct. at 2256. Therefore, the charge of second-degree murder to which Morgan pled guilty as part of the plea bargain was never formally made. *Id.* at 645, 96 S.Ct. at 2257. And second, because Morgan had an unusually low mental capacity, his counsel had failed to explain to him that intent to kill was, in what the court termed, "a critical element of the offense * * *." *Id.* at 647 n. 18, 96 S.Ct. at 2258 n. 18. While counsel's failure to explain the charge was called "reasonable" by the court, it preclud-

ed a finding that the error was harmless beyond a reasonable doubt. *Id.* at 647, 96 S.Ct. at 2258.

Justice Stevens, writing for the United States Supreme Court, noted that this case was "unique" because the trial judge found, as a matter of fact, that the element of intent was never explained to Morgan. *Id.* at 647, 96 S.Ct. at 2258. While the record usually contains either an explanation of the charge by the judge or a representation from counsel that the nature of the offense has been explained, the court said that "even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Id.* at 647, 96 S.Ct. at 2258. Specifically referring to the suggestion that a plea could not be accepted without a complete enumeration of the elements of the offense, the court said that it would assume that a description of the elements was not required. *Id.* at 647 n. 18, 96 S.Ct. at 2258 n. 18.

■■■■ The logical thrust of the court's holding in *Morgan* is the proceeding in which a plea is accepted does not take place in a sterile vacuum. While compliance with Former Rule 15 must not occur by installments, *Crawford*, 701 P.2d at 1153, the totality of the circumstances contribute to the determination of whether the plea is voluntary. In the case before us, Mehring was specifically charged in the Information with the counts of sexual assault in the second degree to which he changed his plea. As a result, unlike *Morgan*, Mehring pled guilty to charges which he was first given notice of by Information and during a prior arraignment proceeding. At the change of plea proceeding, the trial court inquired if Mehring intended to plead guilty to the two counts of sexual assault in the second degree contained in the Information. He replied that he did. Also unlike *Morgan*, Mehring is of above average intelligence. He had attended college and had previous experience with plea bargains and the criminal justice system. In the

change of plea proceeding, Mehring acknowledged that he recalled the elements of the offense and that he had discussed the plea bargain with his counsel. Despite the fact that the trial court did not inquire if the discussions with counsel included descriptions of the elements of sexual assault in the second degree, we may apply the presumption that they did. *Morgan*, 426 U.S. at 647, 96 S.Ct. at 2258.

The present Wyoming Rules of Criminal Procedure, which became effective after this proceeding, incorporate the presumption of *Morgan* that a defendant's discussions with his counsel will include descriptions of the plea bargain and the elements of the offense. The new rule states:

> Except for forfeitures on citations (Rule 3.1) and pleas entered under Rule 43(c)(2), before accepting a plea of guilty or nolo contendere to a felony or to a misdemeanor when the defendant is not represented by counsel, the court must address the defendant personally in open court and, unless the defendant has been previously advised by the court on the record and in the presence of counsel, inform the defendant of, and determine that the defendant understands, the following:
>
> (1) The nature of the charge to which the plea is offered * * *.

W.R.Cr.P. 11(b).

■■ While the discretionary means utilized by the trial court in this proceeding to inform the accused fall short of what may be considered the "better practice," *see* 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure*, § 20.4(c) at 642 (1984), we agree with the *Morgan* court's assumption that complete descriptions of the elements are not mandatory in accepting a plea under Former Rule 15. *See* W.R.Cr.P. 11(b). The courts of our land do not function with scripts requiring each participant to perform his or her specific part in the same manner on each occasion. We should never mistake the presence of the printed or spoken word for comprehension. A ritualistic expression of verbiage, complete with legal terminology and excess, may provide a comfortable layer of

support for technically demanding members of the bar, but would provide little real assurance that the accused actually understands what is about to be accomplished.

■ Given the totality of the circumstances, Mehring received adequate notice of the charges to comply with due process. Therefore, we hold the discretionary means by which the trial court informed Mehring of the nature of the charges and determined that he understood was sufficient to result in voluntary pleas of guilty. W.R.Cr.P. 15(c)(1), Wyo.Rep. 578–584 P.2d XIX (1978). *See* W.R.Cr.P. 11(b).

Mehring, however, maintains his guilty pleas were not voluntary. He presents three contentions. First, Mehring challenges that the pleas were not voluntary because he did not understand the nature of a "recommendation" plea agreement. Second, Mehring asserts that when the trial court sentenced him to a greater term than recommended in the plea agreement, the trial court should have permitted him to withdraw his pleas. Third, Mehring challenges the voluntary nature of his pleas in light of threats and other promises made during the proceedings.

■ A guilty plea is valid when it " ' "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." ' " *Osborn,* 806 P.2d at 271 (*quoting Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) and *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)). *See* W.R.Cr.P. 11(d) (Former Rule 15(d)). The acknowledged standard, adopted by the Supreme Court of the United States, to test whether a plea is voluntary states:

" '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by prom-

ises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).' * * *." *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) (*quoting Shelton v. United States,* 246 F.2d 571, 572 n. 2 (5th Cir.1957), *rev'd on other grounds,* 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)).

During the change of plea proceeding, the trial court informed Mehring that if he entered guilty pleas to the two counts of sexual assault in the second degree contained in the Information, he would be facing a possible maximum penalty of life in the penitentiary and a minimum sentence of five years. The trial court specifically inquired:

THE COURT: Is this change of plea voluntary?

THE DEFENDANT: Yes * * * it is.

THE COURT: Is it the result of any force or threat or promise—

THE DEFENDANT: No * * *.

THE COURT: —outside of those contained in the plea bargain agreement which I understand is in effect?

Before asking the State to disclose the recommendations of the plea bargain, the trial court told Mehring:

THE COURT: * * * Plea bargain agreements are permissible; they are not binding on this Court; this Court might reject the same; particularly, Mr. Mehring, with respect to any sentencing agreement contained in the plea bargain.

As part of the plea bargain disclosure, the State recommended a sentence of not less than ten years nor more than twenty-five years on each count to be served concurrently. Mehring's counsel affirmed that these were the terms of the plea bargain. The trial court then repeated:

THE COURT: I want you to understand that I have some concerns with the plea bargain agreement, particularly that portion of the agreement recommending the actual amount of time that you would be ordered to serve at the penitentiary.

I do not have to be bound just because your attorney and the State's attorney

agree on that amount of time. I can move that amount of time up or down. You understand that?

THE DEFENDANT: Yes * * *.

The trial court inquired what plea Mehring wished to enter to count nine of the Information charging him with sexual assault in the second degree. He replied, "I plead guilty." When asked about count ten, Mehring said, "I plead guilty."

A plea bargain which includes a sentencing recommendation is authorized by Former Rule 15:

(e) *Plea agreement procedure.*

(1) In General.—The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser related offense, the attorney for the state will do any of the following:

(i) Move for dismissal of other charges; or

(ii) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, *with the understanding that such recommendation or request shall not be binding upon the court;* or

(iii) Agree that a specific sentence is the appropriate disposition of this case.

The court shall not participate in any such discussions.

W.R.Cr.P. 15(e)(1), Wyo.Rep. 578–584 P.2d XIX (1978) (emphasis added). *See* W.R.Cr.P. 11(e)(1).

A plea bargain is not binding upon the court until it is accepted. *Percival v. State*, 745 P.2d 557, 559 (Wyo.1987). Once the court accepts the plea bargain it is bound to honor the provisions of Former Rule 15(e)(1)(i) or (iii). *Percival*, 745 P.2d at 559. However, recommendations of particular sentences made under Former Rule 15(e)(1)(ii) are not binding upon the court even after accepting the plea. *Percival*, 745 P.2d at 559.

The two cautionary warnings delivered by the trial court to Mehring before accepting his pleas provided him with sufficient information about recommendation plea bargains to make an intelligent choice. He made the voluntary decision to proceed and pled guilty to two counts of sexual assault in the second degree. The sentences imposed at the trial court's discretion were within the limits, five years to life, imposed by the legislature for an actor who commits two separate acts of sexual assault in the second degree. Wyo.Stat. § 6–2–306(c)(i) (1988). Absent due process defects, which will be considered later, the sentences will not be disturbed on appeal. *Angerhofer v. State*, 758 P.2d 1041, 1044 (Wyo.1988).

Mehring's arguments reflect disappointment that the sentences the trial court imposed exceeded the recommendation contained in the plea bargain. Despite the clear language of the trial court prior to accepting the change of pleas and of Former Rule 15, Mehring contends that he did not understand that sentences greater than those recommended by the State could be imposed. Mehring admits, however, that he did understand and desire that the trial court impose sentences for lesser terms than the ten year minimums recommended. His positions urge logical inconsistencies in which all benefits from a plea bargain flow to the defendant.

Despite his voluntary decision to plead guilty to the charges, Mehring contends when the trial court imposed sentences outside the recommended range, the trial court should have permitted him to withdraw the pleas. The trial court, if it rejects a plea bargain, is required to advise the defendant personally and "afford the defendant the opportunity to then withdraw his plea * * *." W.R.Cr.P. 15(e)(4), Wyo.Rep. 578–584 P.2d XIX (1978). *See* W.R.Cr.P. 11(e)(4). However, this provision applies only if the trial court rejects the bargain as a whole, the dismissal of charges or an agreement for a specific sentence. W.R.Cr.P. 15(e)(2), Wyo.Rep. 578–584 P.2d XIX (1978). *See* W.R.Cr.P. 11(e)(2). The opportunity to withdraw per-

mitted by Former Rule 15(e)(4) does not extend to the trial court's rejection of sentencing recommendations. *Percival,* 745 P.2d at 560.

Mehring suggests that the trial court should have warned him that if the recommended sentences were rejected, he would not be permitted to withdraw his pleas. The present Wyoming Rules of Criminal Procedure include a provision requiring such advice. *See* W.R.Cr.P. 11(e)(2) (requiring advisement that if the court rejects a sentencing recommendation, the defendant has no right to withdraw the plea). However, at the time of the change of plea proceeding, the applicable rule did not require this notice. W.R.Cr.P. 15(e)(2), Wyo. Rep. 578–584 P.2d XIX (1978). This court has previously stated that it would not read requirements into Former Rule 15 that were not included in its plain language. *Duffy v. State,* 789 P.2d 821, 834 (Wyo. 1990); *Percival,* 745 P.2d at 560.

The final procedural issue under Former Rule 15 is whether Mehring's guilty pleas were involuntary because of threats or promises made prior to the change of plea proceeding. The unspecified threats apparently involved the father of one of the uncharged victims. One incident of threatening comments delivered by telephone was acknowledged. The threats were targeted at the first public defender appointed to represent Mehring. Following that incident, that public defender withdrew and a second public defender was appointed from another city.

■ Due process is generally offended only when a plea is coerced by conduct fairly attributable to the State, such as from the judge or prosecutor. *LoConte v. Dugger,* 847 F.2d 745, 753 (11th Cir.), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). However, coercion from a defendant's counsel may create an involuntary plea; for example, by threatening withdrawal if the defendant does not accept the plea bargain or forcing the plea to be entered because counsel is not prepared for trial. *See, e.g., Iaea v. Sunn,* 800 F.2d 861, 867 (9th Cir.1986) (collecting cases) and *Downton v. Perini,* 511

F.Supp. 258, 266 (N.D.Ohio 1981) (holding counsel's threat to withdraw made plea involuntary). Coercion by third parties not representing the State or the defendant has generally not been found to invalidate a plea. *LoConte,* 847 F.2d at 753 (holding coercion by co-defendants and family members did not invalidate plea); *Iaea,* 800 F.2d at 867 (collecting cases).

> [T]hird parties are not responsible for the integrity of the criminal justice system in the same way as judges or prosecutors nor are they in the same positions of power and authority. Acts that might constitute coercion if done by the court or a prosecutor may not rise to that level if done by others.

*Iaea,* 800 F.2d at 867.

■ The existence of threats against the first public defender does not establish that Mehring's guilty pleas were involuntary as the product of coercion. When the trial court inquired at the change of plea proceeding if Mehring was acting as a result of any threat or promise, he replied "No * * *." During the first public defender's representation, there is no evidence of pressure on Mehring to change his pleas or take any other action in response to the threats. Most significantly, there is no contention that the State in any way acted to procure Mehring's pleas by threats.

The withdrawal of the first public defender effectively diminished any potential coercive influence on Mehring. The record discloses that the first public defender withdrew from the case only after insuring that the second public defender, an experienced trial counsel, would represent Mehring. Several months passed between the time the threats were directed to the first public defender and the time of the change of plea proceeding further attenuating any pressure. While threatening behavior should never be tolerated or accepted, the threats in this case did not result in Mehring's pleas being made involuntarily.

Mehring also challenges that promises from the second public defender induced the guilty pleas. Mehring maintains that

the public defender said he had never seen a court exceed the sentencing recommendation without rejecting the plea bargain and a possibility existed for a shorter term sentence than the plea bargain recommendation. Mehring claims the key influence on his decision to accept the plea bargain was the public defender's promise that an effort would be made at sentencing to get Mehring into a sexual offender treatment program.

■ The public defender's statements about the range of sentencing do not rise to the level of promises. At best, the statements represent predictions. It is settled law that "an attorney may offer his client a prediction, based upon his experience or instinct, of the sentence possibilities * * *," which the accused should weigh in considering a plea bargain. *Wellnitz v. Page*, 420 F.2d 935, 936 (10th Cir.1970). However, an erroneous prediction of a likely sentence, unsupported by any promises from the court or the prosecution, does not make a plea involuntary. *State v. Lake*, 180 W.Va. 628, 378 S.E.2d 670, 672 (1989) (*quoting State v. Pettigrew*, 168 W.Va. 299, 284 S.E.2d 370 (1981)).

At the change of plea proceeding, the trial court addressed the prospects of a treatment program:

> THE COURT: Secondarily, I have some concern about the treatment program that is being looked into. I want you to understand that I have nothing to do with that. That would be up to the executive branch of government or the prison administration as to whether you were able to go to any treatment program, so that you must not rely on this Court having any jurisdiction to order you into that kind of a program.
>
> You understand that?
>
> THE DEFENDANT: Yes * * *.

This colloquy occurred before the trial court accepted Mehring's guilty pleas. If the public defender promised Mehring to ask for treatment, he fulfilled his promise by his actions both at the change of plea proceeding and at the sentencing hearing. The trial court correctly articulated to Mehring the limit of its sentencing authority. *See Van Duser v. State*, 796 P.2d 1322, 1325 (Wyo.1990).

■ Mehring's guilty pleas represent a sensible bargain. By pleading guilty to two counts of sexual assault in the second degree, Mehring avoided possible conviction and sentencing for the eight additional counts of sexual assault in the second and third degree contained in the Information. In addition, by accepting the plea bargain, Mehring prevented the State from proceeding to trial on charges of sexual assault involving other victims which could have led to additional sentences. We hold Mehring made a voluntary and intelligent choice in pleading guilty. *Osborn*, 806 P.2d at 271.

Mehring contends that his guilty pleas could not have been voluntary because he received ineffective assistance of counsel from his second public defender. First, Mehring contends counsel was ineffective in choosing to make a motion to remove the judge who presided at the arraignment. Second, Mehring challenges counsel was ineffective in advising Mehring about the change of pleas. Third, Mehring asserts counsel was ineffective in his performance at the sentencing hearing.

At a hearing on remand to consider the issue of the ineffectiveness of counsel, Mehring produced testimony from the first public defender and himself supporting his claims. The second public defender was called as a witness by the State to refute the claims. The trial court found, as a matter of law, that the second public defender's conduct was not deficient and did not result in prejudice to Mehring.

■ The examination of a claim of ineffective assistance of counsel requires a showing that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Dickeson v. State*, 843 P.2d 606, 609 (Wyo.1992) (*quoting Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). When a guilty plea is challenged based on ineffective assistance of counsel, the defendant, to establish preju-

dice, must show that there is a reasonable probability that, but for counsel's errors, a plea of guilty would not have been entered and the defendant would have insisted on going to trial. *Hill,* 474 U.S. at 59, 106 S.Ct. at 370. The *Hill* standard was adopted by Wyoming in *Lower v. State,* 786 P.2d 346, 349 (Wyo.1990). A strong presumption is invoked that counsel rendered adequate and reasonable assistance. *Gist v. State,* 737 P.2d 336, 342 (Wyo.1987). The burden is on the defendant to overcome this presumption. *Dickeson,* 843 P.2d at 609.

Mehring's ineffectiveness claim over the removal of the first trial judge depends upon a showing of prejudice. Mehring finds prejudice in his belief that the challenged judge would have imposed a more lenient sentence. Mehring supports his belief with the first public defender's testimony at the ineffectiveness hearing that the judge was "quite sympathetic to sexual offenders." Mehring also refers to a comment the first trial judge made at arraignment. During a motion for bail reduction, Mehring's first public defender argued that a lower bail would permit Mehring to begin a sexual offender treatment program. The judge said:

> THE COURT: * * * Well, at this time I don't feel comfortable in reducing his [Mehring's] bail, but if you find an appropriate program and he can be enrolled and it can be a situation where he can be taken there and that sort of thing the Court would consider something like that.

■ Mehring's analysis reflects mere speculation. The first public defender's comments about the challenged judge are not evidence of prejudice to Mehring's representation from the change of judges; rather, the comments reflect unsupported prediction. The comments of the trial judge at the arraignment do not disclose any predisposition favoring treatment as opposed to jail confinement in the sentencing of sexual offenders. The judge's comments indicate, at most, that if Mehring found an adequate treatment program, the trial court would consider a reduction in bail. Even if we assume deficient performance from counsel at this stage, Mehring failed in his burden to demonstrate prejudice.

Next, we move to the claim that Mehring's counsel provided ineffective assistance in advising about the change of pleas. Mehring says he was misled by his counsel about the effect of a recommendation plea bargain. At the ineffectiveness hearing, however, counsel testified that he informed Mehring during discussions about the plea bargain that the trial court could reject the recommendation and impose a sentence exceeding the recommended maximum.

■ If we choose to ignore the testimony of counsel and assume deficient performance, Mehring failed again to establish prejudice. The trial court's colloquy before accepting the plea informed Mehring that his sentence could exceed the recommendation contained in the plea bargain. Since the trial court accurately informed Mehring, there is no possible prejudice from counsel's performance at this stage. *Duffy v. State,* 837 P.2d 1047, 1050 (Wyo.1992); *Lower,* 786 P.2d at 349.

■ The final stage at which Mehring asserts his counsel was ineffective was during sentencing. Counsel did not call any witnesses on behalf of Mehring. Mehring testified he desired to have his sister present to refute a statement she had reportedly made during the presentence investigation favoring incarceration. Mehring also said he wanted to have testimony introduced that he had previously been denied treatment by Ohio authorities following sexual offense convictions there.

While counsel did not call Mehring's sister during the sentencing hearing, he successfully argued that her desire was for Mehring to obtain treatment. The trial court agreed to ignore the statement urging incarceration. Counsel also introduced two letters dealing with Mehring's previous attempts to get treatment. The first was from an Ohio correctional facility indicating that while incarcerated there, Mehring had not received treatment. The second letter

was from an attorney who had unsuccessfully attempted to obtain treatment in Ohio for Mehring.

Mehring has not established prejudice from the failure to present witnesses at the sentencing hearing. Counsel effectively countered the impact of the sister's reported statement. Counsel also presented credible information to the trial court that Mehring had previously been denied treatment. In addition, counsel supported the need for some sort of sexual offender treatment program with medical evidence indicating Mehring suffered from pedophilia.

■ The representation provided by the second public defender was competent. Prior to the entry of the guilty pleas, counsel aggressively pursued multiple pre-trial motions on Mehring's behalf. The advice given to Mehring about the plea bargain demonstrated an understanding of the severity of the charges and the State's evidence. The plea bargain Mehring entered into voluntarily and intelligently offered him the best opportunity to avoid life sentences as a consequence of his repeated crimes. As the trial court noted at sentencing, by entering guilty pleas, Mehring avoided the further trauma of a court appearance for the victim in this case. The trial court acknowledged that this mitigating fact would be taken into consideration when imposing sentence. Mehring has not established a reasonable probability that but for counsel's errors, he would have insisted on going to trial. *Lower*, 786 P.2d at 349.

In his final issue, Mehring presents substantive and procedural challenges to the presentence investigation report (hereinafter presentence report). The substantive challenges involve claims that the presentence report contained information not authorized by W.R.Cr.P. 32 which, when considered by the trial court, created a due process violation. The challenged information includes: a sentencing recommendation from the Division of Probation and Parole; a statement about prior probation status; and statements from persons other than the victim.

Sentencing took place on April 9, 1992. The revised Wyoming Rules of Criminal Procedure became effective on March 24, 1992. Therefore, the sentencing hearing was governed by those rules. *Aden v. State*, 761 P.2d 88, 90 (Wyo.1988). For felony proceedings, the presentence report is required by W.R.Cr.P. 32(a) which provides, in pertinent part:

(a) *Presentence investigation.*

(1) When Made.—In every felony case the Department of Probation and Parole shall conduct a presentence investigation and submit a report to the court. * * * In felony cases the investigation and report may not be waived but, with the parties['] consent, the court may permit the report to be filed after sentencing. Otherwise, it shall be considered by the court before the imposition of sentence or the granting of probation. * * *

(2) Report.—The report of the presentence investigation shall contain:

(A) Information about the history and characteristics of the defendant, including prior criminal record, if any, financial condition, and any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in the correctional treatment of the defendant;

(B) Verified information stated in a nonargumentative style containing an assessment of the financial, social, psychological, and medical impact upon, and cost to, any individual against whom the offense has been committed and attaching a victim impact statement as provided in W.S. 7–21–103 if the victim chooses to make one in writing. In any event the report shall state that the victim was advised of the right to make such a statement orally at the defendant's sentencing or in writing. If the victim could not be contacted, the report shall describe the efforts made to contact the victim;

(C) Unless the court orders otherwise, information concerning the nature and extent of non-prison pro-

grams and resources available for the defendant; and

(D) Such other information as may be required by the court.

In *Johnson v. State,* 790 P.2d 231, 232 (Wyo.1990), we examined the use of a presentence report and what circumstances would create a due process violation in sentencing:

We have said that filed presentence reports and information are evidence for the exercise of sentencing discretion, subject only to the rights of the convicted individual to deny, dispute or disprove. *Christy v. State,* 731 P.2d 1204 (Wyo.1987). In three recent cases (*Clouse v. State,* 776 P.2d 1011 (Wyo. 1989); *Coletti v. State,* 769 P.2d 361 (Wyo.1989); and *Smallwood v. State,* 771 P.2d 798 (Wyo.1989)), we said that the sentencing will not be disturbed as violation of due process because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. We further said that the defendant had the burden to "establish that the sentencing judge in fact rested the sentence on false or improper premises." *Smallwood,* 771 P.2d at 802.

*Johnson* dealt with interpretation of the predecessor of the present W.R.Cr.P. 32. *See* W.R.Cr.P. 33, Wyo.Rep. 578–584 P.2d XIX (1978). However, the same principles govern review of due process challenges under W.R.Cr.P. 32.

The presentence report is divided into several sections. Under the heading "Recommendation," the author states: "I recommend the Court sentence Mr. Mehring to a minimum of 20 years in the Wyoming State Penitentiary and that he be ordered to cooperate and participate in any and all programs recommended by his counselor at the Wyoming State Penitentiary." At the sentencing hearing, Mehring objected to the inclusion of the sentencing recommendation in the report. The trial court overruled the objection and stated: "[O]bvious-

ly this Court is not bound by and does not have to consider such a recommendation."

■■■■ Sentencing recommendations are commonly included in a presentence report. *See, e.g., Johnson,* 790 P.2d at 232 n. 2. Mehring is correct in contending that W.R.Cr.P. 32 does not specifically require the inclusion of a sentencing recommendation. Similarly, the legislature, in authorizing a presentence report, did not require a sentencing recommendation as a part of the Code of Criminal Procedure. Wyo.Stat. § 7–13–303 (1987 & Cum.Supp.1993). To the extent that the recommendation is not specifically required, it represents surplusage. However, in imposing sentence, the trial court is given broad discretion to consider a wide variety of factors about the defendant and his crimes. *Griebel v. State,* 763 P.2d 475, 477 (Wyo.1988). A recommendation contained in the presentence report represents one of the factors which the trial court may properly consider. *See* W.R.Cr.P. 32(a)(2)(D).

■■■■ Analytically, we are unable to identify any difference between the presence of the sentencing recommendation included in the plea bargain and the sentencing recommendation included in the presentence report. As we have stated, the sentencing recommendation included in a plea bargain is not binding upon the trial court. W.R.Cr.P. 11(e)(1)(B). Similarly, the sentencing recommendation included in the presentence report is not binding upon the trial court. We hold there was no abuse of discretion in refusing to strike the sentencing recommendation contained in the presentence report and no prejudice to Mehring from the presence of the recommendation in the report. *Johnson,* 790 P.2d at 232.

■■■■ Mehring then challenges the accuracy of a statement about probation status contained in the "Evaluation" portion of the presentence report. After detailing Mehring's seven previous convictions for sexual offenses in Ohio and unfulfilled promises of treatment programs, the report states: "Mr. Mehring was on probation following his first prison sentence. That pro-

bation was revoked because of more offenses and that he absconded from Ohio to Wyoming." At the sentencing hearing, Mehring's counsel successfully challenged this information by telling the trial court that probation was revoked by Ohio authorities because Mehring failed to report to his probation officer, not because of additional offenses. The successful challenge and correction of the presentence report prevents any possible prejudice.

Mehring's final substantive challenge is to the inclusion of statements from persons other than the victim in the presentence report. The statements include three letters from parents of other children allegedly sexually assaulted by Mehring and written comments in the report from Mehring's sister that her son continues to suffer trauma after being abused by Mehring. Mehring characterizes these statements as victim impact statements from uncharged victims or past victims.

Wyoming permits the trial court to consider a victim impact statement prior to the imposition of sentence. Wyo.Stat. § 7–21–103(b) (Cum.Supp.1993). The "victim impact statement" is an explanation of the nature and extent of harm or trauma suffered by the victim which may include economic loss. Wyo.Stat. § 7–21–102(c)(i) and (ii) (Cum.Supp.1993). The victim is specifically permitted to recommend "an appropriate disposition" and discuss the need for restitution. Wyo.Stat. § 7–21–102(c)(iii) and (iv).

A "victim" is defined as "an individual who has suffered direct or threatened physical, emotional or financial harm as a result of the commission of a crime or a family member of a minor * * *[.]" Wyo. Stat. § 7–21–101(a)(iii) (Cum.Supp.1993). The victim is permitted to present an oral victim impact statement at the sentencing hearing. Wyo.Stat. § 7–21–103(a)(i). If the victim chooses, a written statement may be incorporated into the presentence report. Wyo.Stat. § 7–21–103(a)(ii); W.R.Cr.P. 32(a)(2)(B).

■ The State contends, without authority, that W.R.Cr.P. 32 does not restrict victim impact statements to only the victim of charged crimes. We disagree. The victim impact statement is accorded special status under Wyo.Stat. § 7–21–103, including the right to appear before the sentencing court to offer an oral statement and request restitution. We find in that special status a limitation which confines the victim impact statement to information about a particular crime. In *Payne v. Tennessee,* —— U.S. ——, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991), the Supreme Court of the United States upheld the constitutionality of victim impact statements in capital sentencing. The court considered the general purpose of "victim impact statements" and stated:

> Congress and most of the States have, in recent years, enacted similar legislation to enable the sentencing authority to consider information about the harm caused by the crime committed by the defendant. * * * While the admission of this particular kind of evidence—*designed to portray for the sentencing authority the actual harm caused by a particular crime*—is of recent origin, this fact hardly renders it unconstitutional.

*Id.* at ——, 111 S.Ct. at 2606 (emphasis added). *See Barnes v. State,* 858 P.2d 522 (Wyo.1993) (No. 92–198, decided 8/6/93) (citing *Payne*). We hold the purpose of Wyo.Stat. § 7–21–103 is to permit the sentencing court to consider information about the harm caused by the defendant during the commission of the particular crime for which sentence is about to be imposed.

■ Our holding does not mean, however, that information about other crimes or convictions unrelated to the particular crime for which sentence is about to be imposed is impermissible. W.R.Cr.P. 32(a) specifically permits information about the prior criminal record of the defendant and his characteristics to be considered by the trial court before imposing sentence. In evaluating character, the trial court, in exercising its discretion, may consider a broad range of reports and information. *Christy v. State,* 731 P.2d 1204, 1207–08 (Wyo.1987).

The federal courts have had considerable experience with evaluation of character information under F.R.Cr.P. 32 which is substantially similar to W.R.Cr.P. 32. In imposing sentence, the trial court is permitted to go beyond the record to consider the defendant's past conduct and activities including evidence of crimes for which charges were filed but no conviction resulted. *United States v. Garcia,* 693 F.2d 412, 416 (5th Cir.1982). The scope of inquiry may include the factual basis of dismissed charges "as well as hearsay reports implicating the defendant in other crimes if such reports are deemed sufficiently reliable." *Id.* (*citing United States v. Benton,* 637 F.2d 1052, 1060 (5th Cir.1981)). Such evidence of prior criminal activity is "highly relevant to the sentencing decision * * *" and may be considered by the court despite the fact that no prosecution or conviction may have resulted. *United States v. Hill,* 688 F.2d 18, 20 (6th Cir.), *cert. denied,* 459 U.S. 1074, 103 S.Ct. 498, 74 L.Ed.2d 638 (1982). *See also United States v. Madison,* 689 F.2d 1300, 1315 (7th Cir.1982), *cert. denied,* 459 U.S. 1117 (1983) (holding no due process violation occurred in considering a presentence report which contained references to a pending charge and a previously dismissed charge).

In *Madison,* 689 F.2d at 1314–15, the court offered an exposition on the value of considering all evidence of character in determining the length of a defendant's sentence:

> While all judges have the obligation to protect individual rights the judge must not lose sight of the common good of all mankind. In order to render justice to all the judge must be able to impress upon a defendant through the expansive contents of an all encompassing presentence report that we are a country of laws and not men. The criminal must learn that with every cherished right he enjoys he also assumes a corresponding obligation to live according to the law of the land. Our laws are for the protection of all mankind and not just the criminal. Thus, if the defendant has displayed a propensity toward criminal activity over a period of years and has not learned from his past mistakes and transgressions of the law it is important that the judge take these matters into consideration including those cases where the crimes may have been *nolle prosequi* or read into the record and considered by the judge in sentencing the defendant for another crime, but relieving the defendant of a formal judgment of conviction on the particular crimes read into the record. * * * A defendant's juvenile record as well as his record as an adult, a record which contains both convictions and dismissed charges provides the court with evidence of a pattern of criminal behavior which, in turn, is an index of the defendant's character, a critical factor in sentencing when determining a possible potential for rehabilitation.

■ We hold that no due process violation occurred in incorporating the statement of Mehring's sister or the three letters from parents of uncharged victims into the presentence report. The statements were sufficiently reliable for the trial court to consider them in imposing sentence. In sentencing, due process provides a right to be sentenced only on accurate information. *Clouse v. State,* 776 P.2d 1011, 1014 (Wyo.1989). Mehring's failure, on appeal, to show a manifest injustice from the inclusion of the statements and his failure to demonstrate that the trial court relied upon the statements in sentencing means his appeal on this issue must fail.

■ Mehring's procedural challenge to sentencing involves the trial court's failure to attach written findings to the presentence report regarding disputed factual information as required by W.R.Cr.P. 32(a)(3)(C)(ii). Mehring argues that the failure to attach written findings should require a remand for re-sentencing. We disagree. The record sufficiently revealed that the trial court either did not rely on the disputed facts or resolved the questions during the sentencing hearing. *United States v. Kramer,* 943 F.2d 1543, 1553 (11th Cir.1991), *cert. denied,* — U.S. ——, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992). There-

fore, the failure to attach a written record of the trial court's disposition of disputed information to the presentence report requires only a limited remand. *United States v. Gattas*, 862 F.2d 1432, 1435 (10th Cir.1988). We hold this ministerial duty may be corrected by either attaching the relevant pages from the sentencing hearing or by appending the trial court's written findings regarding the disputed information to the presentence report. *United States v. Jackson*, 950 F.2d 633, 638 (10th Cir.1991); *Kramer*, 943 F.2d at 1553. Upon completion of this task, the presentence report and attachments are to be forwarded to the Department of Corrections in compliance with Wyo.Stat. § 7–13–303 (1987 & Cum.Supp.1993).

## IV. CONCLUSION

The careful review of the substantive and procedural contentions of error made by Mehring reveals that he made, with the assistance of competent counsel, two voluntary pleas of guilty to sexual assault in the second degree. The criminal justice system accorded Mehring every necessary procedural safeguard to insure due process. In accepting a plea bargain, Mehring avoided the strong possibility of even more severe penalties for his crimes, despite the fact that his sentences exceeded those recommended in the plea bargain.

We affirm and remand for the limited purpose noted in this opinion.